USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_ 7/28/2022___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
SHAJOHNNY SANTANA,                            :
                                              :
                              Petitioner,     :            21-CV-2659 (VEC)
                                              :            17-CR-438 (VEC)
          -against-                           :
                                              :            OPINION & ORDER
UNITED STATES OF AMERICA,                     :
                                              :
                              Respondent.     :
-------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

        Shajohnny Santana ("Petitioner"), a member of the "Hot Boys," was indicted in 2017 for

racketeering and other crimes.  Mr. Santana moved to dismiss the Indictment on double jeopardy

grounds, *see* Notice of Mot., Dkt. 170,[1] but then withdrew the motion and pled guilty to

racketeering conspiracy in full satisfaction of the charges in the Indictment.  *See* Plea Tr. at 4:20–

22, Dkt. 304.  On December 19, 2018, this Court sentenced Mr. Santana to 120 months'

imprisonment.  *See* Sentencing Tr. at 34:22–24, Dkt. 456.  Mr. Santana appealed his sentence,

and, on March 19, 2020, the Second Circuit affirmed his sentence.  *See United States v.*

*Santiago*, 806 F. App'x 32 (2d Cir. 2020).[2]

        On March 17, 2021, Mr. Santana filed a petition to vacate, set aside, or correct his

conviction pursuant to 28 U.S.C. § 2255, arguing that he received ineffective assistance of

counsel in the district court and on appeal.  *See* Mot., Dkt. 604; Mem., Dkt. 614.  The

Government opposes Mr. Santana's § 2255 petition.  *See* Opp., Dkt. 662.  For the reasons

discussed below, Mr. Santana's § 2255 petition is DENIED.

---

[1]        Unless specified otherwise, citations are to docket entries in Mr. Santana's criminal case, No. 17-CR-438.

[2]        Mr. Santana and his co-defendant David Santiago appealed jointly.

**BACKGROUND**

On July 12, 2017, Mr. Santana was indicted for conspiracy to violate the racketeering

laws (18 U.S.C. § 1962(d)) (Count One), distribution and possession with intent to distribute

heroin, cocaine, and marijuana in violation of 21 U.S.C. § 846 (Count Three), and using and

carrying firearms in violation of 18 U.S.C. § 924(c) (Count Five).  *See* Indictment, Dkt. 3.

On March 29, 2018, Mr. Santana moved to dismiss Counts One, Three, and Five on

double jeopardy grounds.  *See* Santana Notice of Mot., Dkt. 170.  Mr. Santana argued that the

Indictment was substantially similar to a 2013 indictment, *see United States v. Araujo*, No. 13-

CR-811 (2013) (the "Pharmacy Burglaries Indictment," or the "Pharmacy Burglaries Case"), on

which he had been acquitted of all charges, *see id.*, Dkt. 584.[3]  The Court heard oral arguments

on Mr. Santana's motion to dismiss, and, on June 5, 2018, ordered supplemental briefing on the

double jeopardy issue.  *See* Order, Dkt. 249.  The Government filed its supplemental brief on

June 11, 2018.  *See* Gov. Ltr., Dkt. 255.  On June 19, 2018, Mr. Santana pled guilty and

withdrew his motion to dismiss.  *See* Order (June 19, 2018), Dkt. 271.  Because Mr. Santana pled

guilty, this Court did not address the double jeopardy issue raised in the pre-trial briefings.

Consistent with the plea agreement,[4] Mr. Santana pled guilty to the racketeering

conspiracy charge (Count One), Plea Tr. at 17:21, Dkt. 304, and, at sentencing, the Government

dismissed the drug-trafficking and firearms charges (Counts Three and Five, respectively).  *See*

Plea Agreement, Dkt. 662, Ex. A; Sentencing Tr. at 36:22–23, Dkt. 456.  In the plea agreement,

Mr. Santana acknowledged a proposed sentencing guidelines range of 84 to 105 months'

---

[3]     The Pharmacy Burglaries Indictment charged Mr. Santana with conspiracy to burglarize pharmacies in
violation of 18 U.S.C. § 2118(d) (Count One), and conspiracy to violate the narcotics laws, 21 U.S.C. §§ 846,
841(a)(1) and 841(b)(1)(C) (Count Two).  *See* Indictment, 13-CR-811, Dkt. 339.

[4]     The plea agreement is dated June 15, 2018.  *See* Plea Agreement, Dkt. 662, Ex. A (under seal).  The
Government's papers incorrectly indicate the plea agreement was dated November 7, 2016.  *See* Opp., Dkt. 662 at 2.

imprisonment.  *See* Plea Agreement at 3; Pre-Sentencing Report ("PSR") ¶ 11.  At the June 19,

2018 plea hearing, Mr. Santana affirmed that he wished to plead guilty, *see* Plea Tr. at 4:20–22,

confirmed that he had discussed the case and "the consequences of pleading guilty" with his

attorney, Mr. Harvey Fishbein, *id.* at 4:23–25, 5:1, and said that he was "satisfied" with Mr.

Fishbein's representation, *id.* at 5:2–4.  Mr. Santana acknowledged that he knew that the

maximum sentence for the crime was a term of imprisonment of up to twenty years.  *See id.* at

9:10–18.  Mr. Santana said that he understood the sentencing guidelines would have to be

considered by the Court in determining his sentence and said he had discussed the guidelines

with his attorney.  *See id.* at 11–12.  He acknowledged that the Court had the discretion to give

him a sentence different from those guidelines.  *See id.*  Mr. Santana said that no one threatened

him or forced him to plead guilty and that no one had made a promise of what his sentence

would be.  *Id.* at 13:16–18; 13:23–25.

Mr. Santana was sentenced on December 19, 2018.  *See* Sentencing Tr.  The PSR

indicated an updated guideline calculation of 100 to 125 months.  *See* PSR ¶ 148.[5]  Mr. Santana

confirmed at the hearing that he had read the PSR and discussed it with his lawyer.  *See*

Sentencing Tr. at 2:23–25, 3:1–2.  After considering the parties' sentencing submissions, the

Court sentenced Mr. Santana within the guidelines range to 120 months' imprisonment.  *See id.*

at 34:22–24.  Immediately after being sentenced, Mr. Santana requested to withdraw his guilty

plea but stated that he wanted to "continue with [his] attorney," Mr. Fishbein.  *Id.* at 39:13–14.

On January 7, 2019, the Court heard Mr. Santana's request to withdraw his guilty plea,

during which he also asked the Court to relieve Mr. Fishbein as counsel.  *See* Hearing Tr. at

---

[5]      The PSR reflects a one-point increase in Mr. Santana's criminal history as compared to the plea agreement
due to a 2005 youthful offender conviction; this raised his score to 10 points and elevated his criminal history from
category IV to V.  *See* PSR ¶ 148.

2:14–17, Dkt. 454.  Mr. Santana asserted that Mr. Fishbein had promised him a sentence of time

served, *see id.* at 9:17–19, and claimed that his guilty plea "was coerced," *see id.* at 7:4–5.  The

Court rejected the plea withdrawal request  for jurisdictional reasons, citing Federal Rule of

Criminal Procedure 11(e) ("After the Court imposes sentence, the defendant may not withdraw a

plea of guilty and the plea may be set aside only on direct appeal or collateral attack.").  *See id.*

at 7.  The Court, however, granted the request to relieve Mr. Fishbein and appointed Ms.

Lorraine Gauli-Rufo as Mr. Santana's new counsel.  *See id.* at 3:9–11.

Mr. Santana appealed his sentence with Ms. Gauli-Rufo as his appellate counsel.  *See*

*United States v. Santiago*, 806 F. App'x 32 (2d Cir. 2020).  On March 19, 2020, the Second

Circuit affirmed the judgment, holding that the Court did not err in calculating his criminal

history; that there was no improper double counting; and that the Court did not fail to account for

mitigating factors in the sentencing.  *See id.*

Mr. Santana then filed a § 2255 petition.  *See* Mot., Dkt. 604; Mem., Dkt. 614.  Mr.

Santana alleges that Mr. Fishbein provided ineffective assistance of counsel by coercing Mr.

Santana directly and via his family into accepting the guilty plea, misleading him about what his

sentence would be, and abandoning his double jeopardy claim.  *See generally* Mem.  He also

alleges that Ms. Gauli-Rufo, who replaced Mr. Fishbein as Mr. Santana's counsel, provided

ineffective assistance of counsel by failing to raise the double jeopardy claim on appeal and

failing to appeal the Court's denial of Mr. Santana's motion to withdraw his guilty plea.  *See*

*generally id.*  For the reasons discussed below, Mr. Santana's 2255 petition is denied.

## DISCUSSION

The Court notes at the outset that Mr. Santana is proceeding *pro se* and that "the

submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest

arguments that they suggest.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir.

2006) (per curiam) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)).

Under 28 U.S.C. § 2255, a petitioner "may move the court which imposed [the

petitioner's] sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Relief

under § 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing

court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in

a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)

(quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). "As a general rule § 2255 petitioners

may not raise on collateral review a claim previously litigated on direct appeal." *Abbamonte v.*

*United States*, 160 F.3d 922, 924 (2d Cir. 1998). "The 'mandate rule' ordinarily forecloses

relitigation of all issues previously waived by the defendant or decided by the appellate court."

*United States v. Quinteri*, 306 F.3d 1217, 1225 (2d Cir. 2002).

Mr. Santana raises three arguments to support his claim of ineffective assistance of

counsel: (1) his trial attorney, Mr. Fishbein, coerced Mr. Santana, directly and through Mr.

Santana's family, into accepting a guilty plea that he would not otherwise have accepted and

misled him as to the likely length of his sentence; (2) both Mr. Fishbein and Ms. Gauli-Rufo, his

post-sentencing and appellate counsel, provided ineffective counsel by failing to pursue Mr.

Santana's double jeopardy claim; and (3) Ms. Gauli-Rufo provided ineffective appellate

assistance because she did not appeal the denial of his motion to withdraw his guilty plea.

## I.   Mr. Santana's Counsel Was Not Ineffective with Respect to Mr. Santana's Guilty Plea

A claim for ineffective assistance of counsel will be granted only if a petitioner can show:

(1) that his counsel's performance fell below an objective standard of reasonableness under

prevailing professional norms; and (2) that he was prejudiced by his counsel's deficient

performance. *Strickland v. Washington*, 466 U.S. 668, 687–96 (1984). This two-prong test is difficult to satisfy. *United States v. Shi Hui Sun*, 2013 WL 1947292, at *4 (S.D.N.Y. May 8, 2013) ("[Ineffective assistance of counsel] is a difficult showing to make, as courts must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, bearing in mind that there are countless ways to provide effective assistance in any given case." (cleaned up)). To successfully claim ineffective assistance of counsel, the petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687). "A court need not address both prongs of the *Strickland* test; if either fails, the entire claim fails." *Grant v. United States*, 745 F. App'x 76, 77 (2d Cir. 2018) (summary order).

The two-part *Strickland* standard applies to ineffective assistance of counsel claims arising after guilty pleas. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Where a petitioner "is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* at 56 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). In the plea bargain context, to be entitled to relief, the petitioner must demonstrate a reasonable probability that rejecting the plea bargain "would have been rational under the circumstances," *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010), or that "he would have litigated an available defense" had he rejected the plea, *Kovacs v. United States*, 744 F.3d 44, 52 (2d Cir. 2014). To demonstrate prejudice, "the defendant must show more than that the unprofessional performance merely had some conceivable effect [to] satisfy the 'reasonable probability' test[;] however, a defendant need not show that counsel's deficient

conduct more likely than not altered the outcome in the case." *Henry v. Poole*, 409 F.3d 48, 63 (2d Cir. 2005) (alteration in original) (cleaned up).

### A.      Mr. Fishbein Was Not Ineffective in Recommending a Guilty Plea

Mr. Santana argues that his conviction should be vacated because his attorney provided ineffective assistance of counsel by inducing him to plead guilty through "coercion and misrepresentations to enter a guilty plea." *See* Mem. at 3. This claim fails; Mr. Santana has not alleged facts beyond family pressure to support it.

In his affidavit, Mr. Santana describes discussions with his attorney in which counsel allegedly told Mr. Santana about the applicable sentencing guidelines and represented that he would "be able to get [him] time served or worst case scenario an extremely low sentence." Santana Aff. ¶ 10. Mr. Santana alleges that after telling his counsel that he felt uncertain about pleading guilty, Mr. Fishbein "said that he understood how [Mr. Santana] felt," but that the government "would not let [Mr. Santana] get acquitted again so [Mr. Santana] needed to seriously consider the government's plea offer." *Id.* ¶ 11. Mr. Santana alleges that "after Mr. [Fishbein] and [Mr. Santana's] family continually pressed upon [him] to enter a guilty plea, [he] reluctantly agreed to accept the government's plea offer after Mr. [Fishbein] promised [him] that [he] would get time served or at least be home in a couple of years." *Id.* ¶ 12. It wasn't until sentencing that Mr. Santana "realized . . . that [he] had been tricked." *Id.* ¶ 14.

Mr. Santana's current characterization of events is contradicted by his own statements at the time of his guilty plea. At the plea hearing, Mr. Santana said he was satisfied with his attorney's representation. *See* Plea Tr. at 5:2–4. Mr. Santana admits in his § 2255 petition that he was "initially . . . unmoved" by the alleged promise of a time-served sentence that the guilty plea would precipitate, and that only after counsel allegedly "used movant's family to convince him that a guilty plea was in his best interest" did he agree to plead guilty; otherwise, he "would

have proceeded to trial." Mot. at 5. In other words, Mr. Santana claims to have pled guilty because his family encouraged him to do so rather than in reliance on any sentencing promises made by counsel. An attorney is not ineffective for enlisting family members to help a defendant decide whether it is in his best interest to plead guilty rather than go to trial. *See United States v. Grzybek*, 283 F. App'x 843, 846 (2d Cir. 2008) (finding that alleged family pressure does not render a plea involuntary). To the contrary, the effectiveness of Mr. Fishbein's legal representation might be called into question had he *not* consulted with Mr. Santana's family about the plea offer. *See Boria v. Keane*, 99 F. 3d 492, 497 (2d Cir. 1996) (finding ineffective assistance where defense attorney did not advise client and his family about accepting plea, because client's father could have persuaded the defendant to accept the plea, which would have been in defendant's best interest).

Mr. Santana further alleges that "counsel's recruitment of movant's family members was not the only machination used by counsel to induce [him] to enter a guilty plea." Mem. at 4. Other than the broad and conclusory allegation of "coercion and misrepresentations," however, Mr. Santana has not alleged any other "machinations" used by counsel to coerce his guilty plea. *See id.* at 3. Although Mr. Santana states in his affidavit that Mr. Fishbein warned him of potential "spillover prejudice" if he were to proceed to trial with other co-conspirators, Santana Aff. ¶ 8, it is unclear how such advice about defense strategy could be considered unreasonable, nor does it overcome the "strong presumption" that counsel acted within the "wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689.

Mr. Santana also alleges that Mr. Fishbein "misrepresent[ed] to him the sentence [he] would receive by entering a guilty plea." Mot. at 5. When a "defendant's specific claim is that counsel has misled him as to the possible sentence which might result from a plea of guilty, . . .

the issue is whether the defendant was aware of actual sentencing possibilities, and if not, whether accurate information would have made any difference in his decision to enter a plea." *United States v. Arteca*, 411 F.3d 315, 321 (2d Cir. 2005) (citing *Ventura v. Meachum*, 957 F.2d 1048, 1058 (2d Cir. 1999)).  Mr. Santana's sworn testimony at his plea allocution unequivocally demonstrates that he understood that sentencing guidelines were not binding and that the Court had discretion to sentence him to a term of imprisonment longer than the advisory guidelines range.  *See* Plea Tr. at 11:1–25, 12:1–20.  Further, Mr. Santana admits that he knew before pleading guilty that his "sentence exposure would be from 0 to 20 years."  Santana Aff. ¶ 10.

Even assuming the veracity of Mr. Santana's allegation that Mr. Fishbein promised a sentence of time-served (an assertion flatly and credibly denied by Mr. Fishbein and by sworn statements of Mr. Santana during his guilty plea),[6] such a misrepresentation would not constitute ineffective assistance of counsel.  *See United States v. Murphy*, 2022 WL 2110685 (S.D.N.Y. May 16, 2022) ("The Court is entitled to rely upon the defendant's sworn statements, made in open court . . . , that he understood the consequences of his plea, had discussed the plea with his attorney, knew that he could not withdraw the plea, and understood that he was waiving his right to appeal a sentence within the stipulated Guidelines range.") (citing *United States v. Hernandez*, 242 F.3d 110, 112 (2d Cir. 2001) (cleaned up)).

Because Mr. Santana is unable to show that Mr. Fishbein's performance was objectively deficient, he cannot satisfy the first prong of the *Strickland* test.

---

[6]   Mr. Fishbein denies promising Mr. Santana a sentence of time-served and claims that he told Mr. Santana he "expected the Government to argue for a guideline sentence and that at best, [he] was thinking in terms of arguing for five years."  Fishbein Aff., Dkt. 662-1 ¶ 23.  This conflict in affidavits is not material, however, because the dispositive issue is whether Mr. Santana was aware of his sentencing possibilities.  *See Arteca*, 411 F.3d at 321. Mr. Santana's own affidavit and his statements during his guilty plea make clear that he was well aware of the range of possible sentences. *See* Santana Aff. ¶¶ 10–14; Plea Tr. at 11–12.

**B.      Counsel's Performance Did Not Prejudice Mr. Santana**

Although the Court need not address the second *Strickland* prong,[7] even if Mr. Santana had demonstrated that counsel's performance fell below the standard of objective reasonableness, Mr. Santana has failed to satisfy the second prong: that he was prejudiced as a result of Mr. Fishbein's performance.  This prong is not satisfied unless a petitioner can affirmatively prove prejudice by showing "that there is a 'reasonable probability' that, but for the deficiency, 'the result of the proceeding would have been different.'"  *Clark v. Stinson*, 214 F.3d 315, 321 (2d Cir. 2000) (quoting *Strickland*, 466 U.S. at 694).  In the plea bargain context, as is relevant here, the "petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances," *Padilla*, 559 U.S. at 372, or "that he would have litigated an available defense," *Kovacs*, 744 F.3d at 52.

Mr. Santana claims that he "would have proceeded to trial" but for allegedly being coerced into pleading guilty.  Mot. at 5.  But that choice is not convincingly rational: Count Three of the Indictment carried a mandatory minimum sentence of ten years, *see* 21 U.S.C. § 841(b), while Count Five of the Indictment carried a mandatory minimum consecutive sentence of five years, *see* 18 U.S.C. § 924(a)(1)(D).  In other words, Mr. Santana's plea agreement capped his sentencing exposure to no more than twenty years, thus avoiding the possibility of a mandatory minimum sentence of fifteen years.  The only alternative defense Mr. Santana claims he could have pursued is his double jeopardy claim, which, for reasons discussed below, lacks

---

[7]      "[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Strickland*, 466 U.S. at 697.

any merit.  In short, nothing in the record indicates that Mr. Santana would not have pled guilty but for Mr. Fishbein's representation.[8]

For these reasons, Mr. Santana's allegations that Mr. Fishbein provided ineffective assistance of counsel because he coerced Mr. Santana to plead guilty satisfies neither prong of the *Strickland* test.

## II.  Counsel Were Not Ineffective in Abandoning the Double Jeopardy Claim

Mr. Santana argues that his attorneys were ineffective in abandoning his double jeopardy claim as to charges that he alleges were "starkly similar to the charges and involve[] the identical co-defendants" as in the Pharmacy Burglaries Indictment, on which Mr. Santana was acquitted. *See* Mot. at 5; Mem. at 3; Order, Dkt. 249.  Mr. Santana alleges that "counsel did not advise [him] that he could preserve the double jeopardy issue as part of the plea agreement," citing Federal Rule of Criminal Procedure 11(a)(2).[9]  *Id.* at 4.  Mr. Santana further alleges that counsel did not inform him that by raising the double jeopardy claim, "it would be preserved for further review following his guilty plea."  *Id.* (citing *United States v. Leyland*, 277 F.3d 628, 632 (2d Cir. 2002)).  Further, Mr. Santana alleges that his appellate counsel, Ms. Gauli-Rufo, was ineffective when she allegedly told Mr. Santana that the double jeopardy claim could not be raised on appeal because "it was part of the coercion and withdrawal of the plea claim and would have to be raised in an ineffective assistance of counsel claim on collateral review."  *Id.* at 3.

---

[8]     With respect to Mr. Santana's claim that Mr. Fishbein misrepresented the sentence he would receive, the "prejudice issue is 'whether the defendant was aware of actual sentencing possibilities, and if not, whether accurate information would have made any difference in his decision to enter a plea." *Chhabra v. United States*, 720 F.3d 395, 408 (2d Cir. 2013) (quoting *Arteca*, 411 F.3d 315, 320).  As discussed *supra*, Mr. Santana was aware of the sentencing possibilities.

[9]     The Government's argument that Mr. Santana misreads Fed. R. Crim. P. 11(a)(2), *see* Resp., Dkt. 662 at 13, is of no import.  Although it is correct that preserving an issue as part of a guilty plea "requires the consent of the Court and the government," Fed. R. Crim. P. 11(a)(2), Mr. Santana alleges only that his counsel failed to advise him that he "*could*" preserve the issue, Mem. at 4 (emphasis added), not that it would necessarily be preserved or that such consent would have been granted, *see id*.

Even if Mr. Santana's allegations are accurate, his attorneys did not provide ineffective assistance because their advice was not objectively deficient and did not prejudice Mr. Santana. Failure to advise of a double jeopardy claim does not constitute ineffective assistance of counsel if there is "no merit to [the] double jeopardy argument." *See Giraldo-Perez v. United States*, 2009 WL 1492222, at *3 (S.D.N.Y. May 28, 2009); *see also Hammerstone v. United States*, 1997 WL 217592, at *2 (S.D.N.Y. May 1, 1997) ("Because petitioner's double jeopardy claim has no merit, the decision not to raise the claim did not amount to ineffective assistance of counsel.").

The Double Jeopardy Clause "protects against both multiple punishments and successive prosecutions for the same offense." *United States v. Basciano*, 599 F.3d 184, 196 (2d Cir. 2010). Two offenses are the "same" if they are the same both "in fact and in law." *Id*. (cleaned up).  For two conspiracy offenses to be the same in fact they must involve a single agreement. *See United States v. Ansaldi*, 372 F.3d 118, 124–25 (2d Cir. 2004) ("The single agreement is the prohibited conspiracy.") (cleaned up); *see also United States v. Korfant*, 771 F.2d 660, 662 (2d Cir. 1985) (laying out factors to be examined in determining whether conspiracies involve factually distinct agreements).

Mr. Santana and Edwin Araujo were co-defendants in this case and in the Pharmacy Burglaries Case.  Both defendants made motions to dismiss in this case based on double jeopardy; Mr. Araujo moved only to dismiss Count Three while Mr. Santana moved to dismiss the entire Indictment.  *See* Araujo Ltr. (June 15, 2018), *United States v. Araujo*, 17-CR-438, Dkt. 265; *see* Santana Notice of Mot., Dkt. 170.  Mr. Santana pled guilty before his motion to dismiss was decided, thus mooting it.

This Court denied Mr. Araujo's motion because it found that the underlying conspiracies in the Pharmacies Case and the present case (Counts Two and Three, respectively) were the same in law but different in fact, involving two "distinct agreements": a conspiracy to commit non-violent burglaries of pharmacies with intent to steal prescription medication in the Pharmacies Case, and a conspiracy to commit armed invasions of drug dealers' homes in search of heroin, cocaine, and marijuana in the instant case.  *See* Order, Dkt. 280 at 8.  Because the drug conspiracies at issue are factually distinct, this Court rejected Mr. Araujo's double jeopardy argument.  *See id.* at 8–9.  In denying Mr. Araujo's motion, this Court noted: "conspiracy to commit pharmacy burglaries and the charges against Araujo in this case (racketeering conspiracy, drug conspiracy, and firearms offenses) are clearly different law."  *Id.* at 6.

Had Mr. Santana not pled guilty, the Court's rationale in denying Mr. Araujo's motion would have been applied to Mr. Santana's broader motion to dismiss.  Put differently, any double jeopardy motion Mr. Santana might have raised relative to the narcotics conspiracy charge would have been doomed to failure because the agreements charged in the indictment in this case were factually distinct from those charged in the Pharmacy Burglary Indictment; any double jeopardy motion predicated on the racketeering and firearms charges was doomed to failure because those charges were legally distinct from the charges in the Pharmacy Burglary Case.

Mr. Fishbein credibly contends that he discussed with Mr. Santana "the viability of the outstanding double jeopardy . . . issues."  Fishbein Aff. ¶ 12.  Even if he had not, Mr. Fishbein's failure to preserve the double jeopardy argument and his alleged failure to advise Mr. Santana regarding the same would not constitute ineffective assistance of counsel because the double jeopardy argument is entirely meritless.

Likewise, because the double jeopardy claim was without merit, Ms. Gauli-Rufo's decision not to pursue it on appeal does not constitute ineffective assistance of counsel either. But even if the double jeopardy claim had merit, Ms. Gauli-Rufo's representation was not ineffective: her alleged advice that a double jeopardy claim could not be raised on direct appeal after a guilty plea cannot be objectively unreasonable because the advice was legally sound.  *See United States v. Kurti*, 427 F.3d 159, 162 (2d Cir. 2005) ("Where . . . a defendant has validly entered a guilty plea, he essentially has admitted he committed the crime charged against him, and this fact results in a waiver of double jeopardy claims."); *Olson v. Connolly*, 2016 WL 11483848, at *4 (S.D.N.Y. Apr. 15, 2016) (holding that guilty plea waived any possible double jeopardy claim); *Cummings v. United States*, 2014 WL 3388559 at *3 (S.D.N.Y. July 11, 2016). Because this is sensible legal advice, it is not grounds for an ineffective assistance of counsel claim.

### III.   Appellant Counsel Was Not Ineffective in Failing to Appeal the Denial of Mr. Santana's Motion to Withdraw His Plea

Mr. Santana argues that he was prejudiced by Ms. Gauli-Rufo's decision not to appeal his motion to withdraw his plea,[10] but such an appeal would have been meritless.  Ms. Gauli-Rufo credibly claims that she advised that the "coercion" argument be raised in a 28 U.S.C. § 2255 motion, not on direct appeal.  *See* Gauli-Rufo Aff., Dkt. 662-2 ¶ 12.  That advice was

---

[10]     Mr. Santana also alleges that Ms. Gauli-Rufo failed to raise claims regarding "coercion concerning the plea, or the denial of his motion to withdraw the plea" and instead "raised weak and obviously insignificant issues as opposed to those apparent on the record."  Mem. at 5.  Because Mr. Santana does not expound upon the allegedly "weak and obviously insignificant issues," *id.*, at any level of detail, the Court declines to consider the allegation and limits its analysis to the decision not to appeal the motion to withdraw the plea.  Moreover, the fact that Mr. Santana did not attempt to withdraw his guilty plea until after he was sentenced, *see* Hearing Tr. at 8:5–9, renders his post-sentencing allegations of ineffective assistance of counsel tenuous, particularly when they directly contradict Mr. Santana's sworn testimony at his plea hearing expressing satisfaction with his attorney, *see* Plea Tr. at 5:2–4.  *See United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997) ("A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea.").  Therefore, Mr. Santana was not prejudiced by not appealing this claim.

sensible — the Second Circuit treats claims of "coercion," *i.e.*, ineffective assistance of counsel, with "baseline aversion" on direct review.  *See United States v. Khedr*, 343 F.3d 96, 100 (2d Cir. 2003) (quotations omitted).  Most critically, because the Court finds that Mr. Fishbein's assistance of counsel was not ineffective, Ms. Gauli-Rufo's decision to forego arguing the same on appeal cannot constitute ineffective assistance of counsel because Mr. Santana was not prejudiced by that decision.

## CONCLUSION

For the foregoing reasons, Mr. Santana's claims of ineffective assistance of counsel are meritless, and because he fails to demonstrate any constitutional error or fundamental defect, his § 2255 petition is DENIED.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and permission to proceed *in forma pauperis* is therefore denied.  The Clerk of Court is respectfully directed to terminate the open motion at docket entry 604.  The Clerk is further directed to mail a copy of this opinion to Mr. Santana and to note the mailing on the docket.


**SO ORDERED.**

**Date:  July 28, 2022**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**

15